E-FILED
Friday, 16 June, 2006  03:13:49 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD, ILLINOIS

| | | |
|---|---|---|
| TERRY J. LECATES, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 05-3126 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on cross-motions for summary

judgment.

## I.  BACKGROUND

On February 20, 2002, Plaintiff Terry J. Lecates applied for

Disability Insurance Benefits ("DIB") alleging disability due to an anger

disorder since December 13, 2001.  On August 25, 2004 the Plaintiff,

represented by an attorney, appeared and testified at a hearing before

Administrative Law Judge John M. Wood (the "ALJ").  Lecates, who was

1

forty years old on the date of the ALJ's decision, had a high school education and past relevant work as a janitor, busboy, dishwasher, machine operator and laborer.  Lecates last worked in December 2001 and lives with his girlfriend and her five children

On March 24, 2005, the ALJ denied Lecates' claim.  The ALJ discussed the medical and other evidence in detail and concluded that Lecates had severe depression, anxiety, a personality disorder, an intermittent explosive disorder, and a history of substance abuse.

The ALJ further found that Lecates' impairments restricted him to work activities limited to simple and repetitive tasks, working at his own pace to meet production standards by the end of the workday, and only occasional interaction with the public, co-workers and supervisors.  Because work as a janitor did not require the activities excluded by these limitations, the ALJ concluded that Lecates could perform his past work as a janitor.

The Appeals Council denied Lecates' request for review of the ALJ's decision, and the ALJ's decision is Commissioner's final decision in this

2

matter.  The court has authority to review this action pursuant to 42 U.S.C. § 405(g).

*A. History*

Lecates points out he has been arrested and jailed on five or six occasions for domestic violence against his girlfriend.  Lecates also states that he does not leave home alone.  His girlfriend reports he has frequent angry outbursts and has no friends outside of home.  Lecates has a history of difficulty getting along with co-workers and supervisors and has been fired from most of his previous jobs because of his anger problems. He was fired in 1999 for throwing objects at a co-worker and let go from another job because he accused the supervisor of sexual harassment.

On October 13, 2001, a few months before his alleged onset of disability, Lecates attempted suicide by cutting his wrists.  Following this attempt, Lecates was assessed by Terry Travis, M.D., at the Mental Health Center of Central Illinois on October 13 and November 13, 2001. It was thought that Lecates might have some form of post traumatic

3

stress disorder due to witnessing his brother murder his father or that he might have an intermittent explosive disorder. His global assessment of functioning (GAF) was rated at 60, indicating mild symptoms.[1]

On February 28, 2002, Lecates was admitted to St. John's Hospital because of an overdose of Tegretol after an argument and physical fighting with his girlfriend. Robert Pary, M.D., reported that Lecates claimed that he overdosed with 50 tablets of Tegretol, although no pill fragments were noted in activated charcoal-induced emesis. Additionally, the level of Tegretol in his body did not support the reported overdose with 50 tablets of Tegretol. On March 1, 2002, Lecates' counselor, Mr. Mark England, reported that he consulted with Dr. Pary who told him the emergency staff questioned the validity of Lecates' statements. Mr. England stated that this was no doubt a manipulative act and that he would feel comfortable with sending Lecates home as long as he was

---

[1]According to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), a GAF rating of 60-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupation, or school functioning (e.g. occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000).

willing to contact the help line if he felt like harming himself.  Lecates was discharged on March 2, 2002.

On April 10, 2002, Lecates again went to the emergency room for an overdose of Trileptal, stating that he took 36 tablets after an argument with his girlfriend.  Lecates was admitted to the Andrew McFarland Mental Health Center.  During his hospital stay, Lecates participated in programs and received medication.  At the time of discharge, he had a cooperative and sociable attitude and behavior, normal motor activity, a much better mood, normal speech, intact, coherent and goal-directed thought and no delusions, hallucinations, suicidal or homicidal ideation.  His discharge diagnosis was depressive disorder, not otherwise specified, and history of alcohol and cannabis abuse, in remission, with anti-social personality traits.

On May 22, 2002, Dr. Travis reported that Lecates returned for a routine medication check.  At the meeting, Lecates said he most recently had an altercation with his girlfriend where he ended up in jail.  There was now an order of protection against him, but he told Dr. Travis he

was doing quite well.  Lecates had taken Zoloft since his five day

hospitalization at McFarland MHC.  Lecates stated that he did well,

except occasionally he got angry, but always with his girlfriend.  Dr.

Travis stated that Lecates had relatively poor insight and judgment, but

showed no evidence of psychosis and related reasonably well with him.

Dr. Travis discussed going back on the Tegretol and also encouraged

Lecates to increase the Zoloft.

On June 5, 2002, a progress note indicated that Lecates was in for

review and was doing well and had no problems in his relationship and

no episodes of violence.  His order of protection was vacated.  He was

pleasant and cooperative and denied any disturbances in mood or

thoughts of harm to himself of others.

On November 25, 2002, Dr. Travis' report noted that while Lecates

stated that he had been taking his medication, records indicated that he

had not received any medications since his May 22, 2002, visit.  Dr.

Travis also reported that Lecates was sloppily dressed and had significant

body odor and blunted affect.[2]  He presented information very minimally, but did not appear psychotic and denied psychotic symptoms. His insight and judgment were poor.  Dr. Travis prescribed more medications and gave him a six-week supply of samples.

On February 3, 2003, Dr. Travis reported that Lecates returned for a medication check.  Lecates indicated that he was doing well on medications and felt they were quite helpful.  He got upset once a couple of days earlier, but most of the time felt quite good and was coping well. He was sloppily dressed and had significant body odor and blunted affect.  Dr. Travis gave Lecates a three-month supply of his medication.

On April 28, 2003, Dr. Travis reported that Lecates continued to do quite well.  He was appropriately dressed, did not have body odor, interacted well, had reasonable insight and judgment, and no evidence of psychosis.  He was to return to see Dr. Travis in six months.

On October 13, 2003, Dr. Travis reported that Lecates returned

---

[2]A blunted affect is defined as a disturbance in mood manifested by shallowness and a severe reduction in the expression of feeling.  Stedman's Medical Dictionary 32 (27th ed. 2000).

and had been reasonably stable.  He had done well, except for three

sporadic episodes where he had domestic battery charges brought against

him.  In addition, Lecates had not been keeping his appointments with

his counselor.  Lecates was sloppily dressed, had body odor, was

unshaven and had blunted affect, with poor insight and judgment.  He

denied any psychotic symptoms.  Dr. Travis increased his Zoloft and

continued prescribing Zyprezxa.

On December 9, 2003, Dr. Travis reported that Lecates returned

for routine medication check and that Lecates stated that his medication

was working well and he had many less anger episodes.  He was sloppily

dressed, had no body odor, a blunted affect but related well with Dr.

Travis and had some reasonable insight and judgment.

On March 2, 2004, Lecates was seen by Mary Conklen, A.P.N.[3]

Lecates reported that he had some episodes of social anxiety, but denied

any anger or explosive episodes.  He was not currently seeing a therapist

and felt he did not need to.  He denied any adverse reactions or side

---

[3]Advanced Practice Nurse

effects to the medications.  He was well groomed and had normal

psychomotor behaviors and speech, with intact thought processes which

were coherent, logical and relevant.  His insight and judgment were poor,

his intelligence appeared below average, but he had adequate attention

and concentration.  He denied any memory deficits and did not appear

to be a potential danger to himself or others.  Ms. Conklen reported that

Lecates had been stable on his medications for sometime.

On May 4, 2004, Michael Trieger, Ph.D., performed a consultative

examination of Lecates.  Lecates told Dr. Trieger that he was unable to

keep a job because he got angry and said things he should not say or did

things which were aggressive and even assaultive towards co-workers and

supervisors.  Lecates also told Dr. Trieger about his suicide attempts and

past jailings.  Dr. Trieger completed a medical source statement of

Lecates' ability to do mental work-related activities and opined that

Lecates had moderate limitations[4] in his abilities to remember and carry

out short, simple instructions, as well as detailed instructions, and

---

[4]Defined as a moderate limitation in the area but still able to function satisfactorily.

moderate limitations in his ability to make judgments on simple work-related decisions.  He had moderate limitations in his ability to interact appropriately with the public and to respond appropriately to changes in a routine work setting.  Dr. Trieger further opined that Lecates had marked limitations[5] in interacting appropriately with supervisors, co-workers, and responding appropriately to work pressures in a usual work setting.  Dr. Trieger stated that he based his opinion of Lecates' limited cognitive ability on his current psychiatric illness and on the fact that he had lost most of his previous jobs due to insubordination or assaultive behavior.

On May 25, 2004, Ms. Conklen again saw Lecates for medication monitoring and treatment of his intermittent explosive disorder.  Lecates reported that he was a little edgy because he received notice of his social security disability hearing.  He stated that his last explosive episode was three to four months ago and although he and his girlfriend had some arguments, he had not in trouble with the law.  He stated that he was

---

[5]Defined as severely limited in the ability to function in the area, but not precluded.

10

taking his medications as prescribed and denied any adverse reactions or side-effects. He spent most of his day watching TV, had a good appetite but had some middle insomnia. Lecates did not appear to be a potential danger to himself or others and he was cooperative throughout the session. Ms. Conklen again stated that Lecates was stable on his current medications and had been so for quite some time.

D. Administrative Hearing

At the hearing on August 25, 2004, a vocational expert (VE) testified that she was familiar with the jobs which existed in the state of Illinois, that she had reviewed the exhibits in the file that dealt with Lecates' past work, and that she had heard his testimony. The ALJ asked the VE a hypothetical question that assumed the same age, education, and past work experiences as Lecates and that further assumed that he had no exertional limitations, but could perform only simple repetitive tasks with only occasional interaction with the public, coworkers and supervisors. In response, the VE testified that Lecates could perform his past janitor work, because it is pretty much done in isolation, as well as

his other past jobs.  The ALJ then asked the VE to incorporate a restriction that required the individual to work at his own pace, he would have to meet the production standards of the particular job, but would be able to do so during the hours of a workday as opposed to at more periodic intervals.  In response, the VE testified that the individual could perform his past janitorial work, but none of his other past jobs.  The VE added that the janitor position is performed in the national economy, requires virtually no interaction with the public, infrequent to virtually no interaction with co-workers, and only occasional interaction with a supervisor, typically only once a day, sometimes even less.

Given the limitations in the hypothetical question, the VE also testified that there were numerous other jobs that could be performed, such as more than 175,000 janitor, 36,743 farm and grain worker jobs state-wide, and 13,630 vehicle cleaner and detailer jobs.

Thus, the ALJ concluded the Plaintiff was capable of performing his past relevant work as a janitor and was not entitled to DIB.  Lecates appeals, arguing that the ALJ's decision is not supported by substantial

evidence.

## II.  ANALYSIS

In determining whether a plaintiff is disabled under the Social Security Act, an ALJ uses the five-step inquiry set out in 20 C.F.R. § 404.1520.  If the ALJ makes a dispositive finding at any step, he does not review further.  20 C.F.R. § 404.1520(a).  Through step four, the Plaintiff bears the burden of proving the existence and the severity of any functional limitations caused by his impairments; he also bears the burden of proving that his impairments preclude him from performing his past relevant work.  Bowen v. Acarid, 482 U.S. 137, 146 n.5 (1987); Young v. Secretary of Health and Human Services, 957 F.2d 386 (7th 1992).  At step five of the evaluation process, the burden shifts to the agency to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.  Acarid, 482 U.S. at 146 n.5.

Judicial review is limited in scope by section 205(g) of the Social Security Act, which provides that the findings of the agency as to any

fact, if supported by substantial evidence, shall be conclusive.  See 42

U.S.C. § 405(g) (incorporated by reference into Title XVI at 42 U.S.C. §

1383(c)(3)).  Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations

omitted); see also Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995).  The

issue is not whether the Plaintiff is disabled, but rather whether the ALJ's

findings are supported by substantial evidence.  Jens v. Barnhart, 347

F.3d 209, 212 (7th Cir. 2003).  To determine whether substantial

evidence supports the ALJ's decision, the reviewing court is not permitted

to substitute its judgment for that of the Commissioner "by reconsidering

facts, re-weighing evidence, resolving conflicts in evidence, or deciding

questions of credibility."  Cannon v. Apfel, 213 F. 3d 970, 974 (7th Cir.

2000); Williams v. Apfel, 179 F.3d 1066, 1071-72 (7th Cir. 1999).

The ALJ considered the record consisting of testimony and records

from  Dr. Travis, Dr. Pary, Dr. Trieger, Mr. England, Ms. Conklen and

the VE.  From this record the ALJ determined that Lecates has severe

mental impairments which limit his ability to work.  However, the ALJ

also determined that Lecates is still capable of performing his past

relevant work.

Lecates alleges the ALJ's determination of his psychiatric abilities

and his capabilities to perform work is inconsistent with the record.  He

points out that he has a history of severe mental issues likely stemming

from at age 10 witnessing his brother kill his father in front of the family.

Lecates further points out that he has been institutionalized for suicide

attempts on multiple occasions and at times has had a GAF of 40.

Furthermore, Lecates states that there is no psychiatric report by an

examining physician referenced by the ALJ that show Lecates' capabilities

adopted in the decision.

However, the ALJ did take into account testimony from Dr. Travis,

Lecates' treating physician, who generally reported that he was doing well

when he complied with his medications.  Not only was this the opinion

of Dr. Travis, but Mr. England and Ms. Conklen agreed in their own

evaluations.  Further, while Lecates was treated for suicide attempts, the

15

doctors questioned whether an actual suicide attempt was made after finding no pill fragments in his mouth. Because those attempts were found to be manipulative and not a result of mental illness they bear no real weight in considering the record. The ALJ correctly determined that Lecates' mental impairment resulted in severe limitations but did not preclude him from work.

The ALJ determined that Lecates is capable of performing his past relevant work as a janitor. In reaching this decision the ALJ considered Lecates limitations of activities limited to simple and repetitive tasks, working at his own pace to meet production standards by the end of the workday, and only occasional interaction with the public, co-workers and supervisors. These limitations were presented to the VE who testified that Lecates could perform his past relevant work as a janitor, among other jobs. Additionally, in making this determination the judge relies on testimony that Lecates was stable while on medication.

Lecates contends that the ALJ's determination regarding Lecates'

16

capacity to work is not supported by substantial[6] evidence in the record.

He claims that the ALJ's determination that medications were effective in

helping Lecates was flawed because while on the medications he was

arrested for battery and attempted to commit suicide.  In addition,

Lecates points out that Dr. Trieger indicated that he is moderately

limited in his ability to remember detailed instructions, to maintain

attention and concentration for extended periods, to perform activities

within a schedule and to sustain an ordinary routine.  Because the ALJ

did not more heavily weigh these additional facts, Lecates believes there

is not substantial evidence to support the findings.

The ALJ's determination of Lecates' ability to work is supported by

substantial evidence.  While Lecates may have had occasional episodes

while on the medications, the ALJ correctly took this into consideration

when making his decision.  In doing so, the ALJ recognized a limit on

Lecates ability to interact with supervisors and the public and take

---

[6]In order to affirm, the ALJ's decision must be supported by substantial
evidence, which is evidence a reasonable mind might accept as adequate to support
a conclusion.  <u>Smith v. Apfel</u>, 231 F.3d 433 (7th Cir. 2000).

directions from others.  Additionally, because Dr. Trieger was not Lecates

treating physician his opinions are not entitled to added weight.[7]  Dr.

Trieger, at the request of the agency, performed a one time evaluation of

Lecates.  Dr. Trieger based his statement on what he was told by Lecates

and was not aware that Lecates' treating physicians noted he did well

when taking medications.  The ALJ's determination concerning the

Plaintiff's ability to work is supported by substantial evidence.

The ALJ also found that while Lecates has difficulty interacting

with people, he is still capable of substantially gainful employment.

Again, the ALJ reached this conclusion with support from the doctors and

counselors who noted Lecates did well while on medications.  The ALJ

reached this conclusion despite information from Dr. Treiger indicating

that Lecates could not work competitively because of his marked

limitations.

Lecates argues the ALJ erred in substituting his own opinion for the

---

[7]The opinion of a treating physician is entitled to controlling weight if it is well supported by medical findings and is not inconsistent with the other substantial evidence in the record.  Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985) (citing Allen v. Weinberger, 552 F.2d 781, 786 (7th Cir. 1977)).

18

opinion of a treating physician.  Lecates believes that because Dr. Trieger

opined that he has marked limitations in his ability to communicate with

people in general and respond appropriately to work pressures, there

could be no way the ALJ could find that he is capable of substantially

gainful work.  In addition, Lecates points out that he has been fired from

every job he has ever held due to problems with people working with

him.  Lecates further alleges that the ALJ substituted his own by not

properly weighing the testimony of Dr. Trieger.  Because the ALJ did not

fully weigh Dr. Trieger's opinions, Lecates argues the ALJ's decision

should be reversed.

The ALJ did not substitute his own opinion for that of a treating

physician.  Dr. Travis was Lecates' treating physician, not Dr. Treiger.

Dr. Travis observed Lecates over a lengthy period of time while he had

been taking his medication and while not taking his medication.  Further,

Dr. Travis treated Lecates after his alleged suicide attempt.  Because the

observations of Dr. Trieger were based solely on the words of Lecates and

not his actions, his testimony cannot be given the same weight as Dr.

Travis'.  The ALJ did take into account the limitations named by Dr.

Treiger when asking the VE questions.  Because the ALJ did nor err in

weighing the testimony of the doctors and correctly considered Lecates'

work limitations his decision was supported by substantial evidence.

The ALJ determined that Lecates was capable of performing his

past relevant work as a janitor.  The ALJ asked the VE a hypothetical

question that assumed the same age, education and past work experiences

as Lecates, and further assumed that the hypothetical individual had no

exertional limitations but could perform only simple repetitive tasks with

only occasional interaction with the public, coworkers and supervisors.

In response, the VE testified that Lecates could perform his past work as

a janitor.  To clarify, the ALJ also asked the VE to incorporate the

restriction that required the individual to work at his own pace and have

to meet production standards during the hours of the work day to which

she replied he could still perform his work as a janitor.  Because the ALJ

made the determination that Lecates could perform his past relevant

work as a janitor at step four he did not consider step five, whether there

are a significant number of jobs in the economy which Lecates is capable

of performing.

Lecates alleges the ALJ has not met his burden of proof that the

claimant can perform work that exists in significant numbers in the state,

as the VE's testimony was insufficient to support the determination.

Hypothetical questions posed to VE's must include all limitations

supported by medical evidence on the record.  <u>Steel v. Barnhart</u>, 290

F.3d 936 (7th Cir. 2002).  Specifically, Lecates complains that the ALJ's

hypothetical was limited to occasional interaction with the public,

coworkers and supervisors.  Because Lecates could not even maintain a

job when meeting with a supervisor once a week, he argues he could

clearly not handle occasional interaction.  Additionally, Lecates

complains the ALJ did not mention in his hypothetical question several

other limitations mentioned by the state agency physician, including his

inability to maintain regular attendance, inability to keep a regular

routine and his inability to accept instructions.  Because the ALJ did not

allegedly include all limitations on Lecates' ability to work he believes the

decision should be reversed.

Because it was found that Lecates could perform his past relevant work the ALJ was correct in not furthering past step four. <u>See</u> 20 C.F.R. § 404.1520(a). Therefore, the Commissioner did not need to identify a substantial number of jobs in the national economy which Lecates could perform. The ALJ was not incorrect in not including all limitations found by the state agency physician because all limitations stated by the treating physicians were included in the hypothetical. Nevertheless, the state agency physician's findings were not inconsistent with the ALJ's findings which were incorporated into the hypothetical question. Because the hypothetical question incorporated the restrictions supported by substantial evidence, the ALJ could justifiably rely on the VE's testimony which supports substantial evidence in the ALJ's step four finding.

<u>Ergo</u>, the Plaintiff's Motion for Summary Judgement (d/e 10) is DENIED. The Defendant's Motion for Summary Affirmance (d/e 15) is ALLOWED. This case is CLOSED.

IT IS SO ORDERED.

ENTER: June 14, 2006

FOR THE COURT:

s/ Richard Mills
United States District Judge